**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**Case No. 1:26-cr-12**

v.

**JUDGE DOUGLAS R. COLE**

**DANIEL SANDOVAL,**

**Defendant.**

**<u>OPINION AND ORDER</u>**

A Magistrate Judge ordered Defendant Daniel Sandoval detained pending trial in this criminal matter, (Doc. 8, #79), in which Sandoval allegedly conspired to traffic methamphetamine, (Indictment, Doc. 3, #56). More specifically, the Magistrate Judge found, based on the evidence presented at the detention hearing, that Sandoval both posed a danger to the community and presented a significant flight risk, neither of which could be sufficiently addressed by any condition or set of conditions surrounding his release. (Doc. 8, #77). Sandoval now moves under 18 U.S.C. § 3145(b) for de novo review of the Magistrate Judge's detention order. (Doc. 12). At Sandoval's request, the Court held a hearing on that motion on June 30, 2026. (6/30/26 Min. Entry). There, the parties proffered their competing views on what the evidence would show, but did not present witnesses or other evidence. Having considered the proffered evidence and the arguments that the parties presented in their briefing and at the hearing, the Court concludes Sandoval is properly detained pending trial. Accordingly, the Court **DENIES** Sandoval's Motion (Doc. 12).

## BACKGROUND

On February 11, 2026, the grand jury indicted Sandoval for Conspiracy to Possess with Intent to Distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. (Doc. 3, #56). If a jury finds Sandoval guilty of that charge, he faces a mandatory minimum term of incarceration of ten years. 21 U.S.C. § 841(b)(1)(A).

More specifically, the government contends that Sandoval trafficked well over 500 grams of a methamphetamine mixture. Indeed, the government claims it was actually some 300 *pounds*, which amounts to roughly 136,078 grams. (Resp., Doc. 13, #92). And the government also described the concentration of that methamphetamine—"the DEA North Central Laboratory confirmed that 87 kilograms [i.e., 192 pounds] of methamphetamine had 97% purity, and 51 kilograms [i.e., 112 pounds] of methamphetamine had 88% purity." (*Id.* at #95–96). Additionally, the government alleges Sandoval conspired with Ramiro Mendoza and Jontah Jackson, who were both indicted in a separate case and both have since pleaded guilty to conspiracy to distribute that methamphetamine. (*Id.* at #92; *see* Plea Agreements, *United States v. Mendoza*, No. 1:25-cr-12 (S.D. Ohio), Docs. 49, 58). As alleged in that case as well, the methamphetamine at issue here allegedly was smuggled into the country via fake shrink-wrapped paver stones. (Doc. 13, #96). And Sandoval allegedly led this conspiracy. (*Id.*).

On May 19, 2026, Sandoval was arrested in Los Angeles. (Doc. 8, #66; 5/19/26 Arrest Entry). The same day, he had his initial appearance in the Central District of

California. (Doc. 8, #72). The Magistrate Judge ordered him temporarily detained pending a detention hearing. (*Id.* at #63). A week later, the Magistrate Judge held the hearing and concluded that the United States had satisfied its burden of showing that Sandoval both presented a danger to the community and a risk of nonappearance. (*Id.* at #76–79). He cited six considerations for flight risk: (1) "Defendant's lack of ties to the charging district," (2) "Defendant's frequent and recent travels to Mexico, where his family (in-laws) have a ranch," (3) "discrepancies in employment and source of income," (4) "current drug use," (5) "Defendant's father, with whom Defendant maintains some contact, is a fugitive from indictment," and (6) the "unrebutted presumption under 18 U.S.C. § 3142(e)(3)." (*Id.* at #78 (cleaned up)). Next, the Magistrate Judge listed four factors supporting a finding of dangerousness: (1) again, the "unrebutted presumption under 18 U.S.C. § 3142(e)(3), (2) the "nature of allegations as reported by the case agent," (3) "alleged cartel ties," and (4) "recent criminal history." (*Id.* at #79 (cleaned up)).

On June 19, 2026, Sandoval moved for review of the Magistrate Judge's detention order. (Doc. 12). He first notes that the original pretrial services report from California recommended release under certain conditions, and pretrial services only later amended its report to recommend detention. (*Id.* at #87). Sandoval proceeds to acknowledge he has pending charges in state court in California, but claims those have not moved forward and he otherwise has no criminal record. (*Id.*). Likewise, he does not have a history of violence, and claims that he only possesses "vintage" firearms. (*Id.* at #88). As for flight risk, Sandoval describes his strong ties to

California, especially his grandparents and wife of eight years. (*Id.* at #87). Sandoval further argues that his wife has the resources to post any bond if necessary. (*Id.* at #87–88). And beyond that, Sandoval cites data from the Administrative Office of the U.S. Courts that less than 2–3% of those released commit new offenses. (*Id.* at #88). From this, he argues there is minimal risk on either the flight or dangerousness fronts. (*Id.*).

The government disagrees. (Doc. 13). To start, it observes that a rebuttable presumption of detention applies in this case because Sandoval is charged with an offense under the Controlled Substance Act that could result in a mandatory minimum sentence of ten years' incarceration, and it argues that Sandoval cannot rebut it. (*Id.* at #94–95). More specifically, the government highlights the "industrial scale" of this conspiracy and Sandoval's leadership role within it. (*Id.* at #95–96). Next, while conceding that Sandoval has no previous convictions, the government emphasizes his pending California state case for Possession of Controlled Substances while Armed and Possession of a Stolen Vehicle. (*Id.* at #96–97). As far as his ties to California, including his wife, the government suggests there are several inconsistences between Sandoval's responses to pretrial services and his wife's answers, particularly concerning his employment history and drug use, suggesting that the relationship between the two may not be all that Sandoval makes it out to be. (*Id.* at #97–98). The government next argues that Sandoval presents a significant flight risk because he has a history of traveling to Mexico and was arrested in this case immediately upon returning from Mexico. (*Id.* at #97). As for the weapons, while

the government acknowledges the two purportedly vintage weapons, it also points out that he owns a so-far-unaccounted-for Glock 19. (*Id.* at #98). And finally, it emphasizes the danger to whole neighborhoods that necessarily results from selling 300 pounds (i.e., 136,000 grams) of methamphetamine, (*id.* at #98–99), a drug that is typically sold in illicit transactions by the gram.

Sandoval replied, first emphasizing his ties to California and minimizing the purported discrepancies between his testimony and that of his wife. (Doc. 14). He also highlights that the most recent pretrial services report, from this district, recommends release under certain conditions. (*Id.* at #100). In response to the government's flight risk concerns, he argues that if he were going to flee he would have done so when his alleged co-conspirators were indicted a year earlier or when his father fled. (*Id.* at #101). Beyond that, he alleges his wife or his grandparents could post their homes as a property bond, and he could be released with electronic monitoring. (*Id.*).

The Court held a hearing on the motion on June 30, 2026, and took the matter under advisement. (6/30/26 Min. Entry). So the matter is ripe for review.

## LAW AND ANALYSIS

When a magistrate judge orders a defendant detained pending trial under 18 U.S.C. § 3142(e) as a flight risk or danger to the community and the defendant challenges that determination before the district court, the "district court reviews the magistrate judge's decision de novo." *United States v. Roberson*, No. 1:21-cr-127, 2022 WL 2980530, at *2 (S.D. Ohio July 28, 2022) (cleaned up) (collecting cases). As part

of this review, the Court considers the entire record, including the Pretrial Services Report, the original detention hearing, all briefings filed in the matter, and any evidence the parties tender at the hearing. *United States v. Carter*, No. 1:20-cr-62-1, 2021 WL 687858, at *2 (S.D. Ohio Feb. 23, 2021). Here, both parties further agreed that the Court could rely on proffered evidence, as neither side presented witnesses or any other actual evidence.

In conducting that review, the "default position of the law" is that "a defendant should be released pending trial." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). At the same time, the Court must balance the law's concern for the liberty of a potentially innocent defendant with the need to protect the community and to preserve the integrity of judicial proceedings. So if there is no condition or combination of conditions that will both (1) "reasonably assure the appearance of" the defendant at future proceedings (the risk-of-flight factor), and (2) reasonably assure "the safety of any other person or the community" (the dangerousness factor), a court must deny pretrial bond. 18 U.S.C. § 3142(e). When evaluating these issues, the Court ordinarily considers (1) "the nature and circumstances of the offense"; (2) "the weight of the evidence against the defendant"; (3) "the history and characteristics of the defendant"; and (4) "the nature and seriousness of the danger to any person of the community that would be posed by the defendant's release." *United States v. Parish*, No. 1:21-cr-127-14, 2022 WL 3654892, at *4 (S.D. Ohio Aug. 25, 2022) (citing 18 U.S.C. § 3142(g)). To be clear, though, the "weight of the evidence" goes to the weight of the evidence of dangerousness or flight, not the weight of the evidence of the

defendant's guilt. *United States v. Bothra*, No. 19-1092, 2019 WL 8883547, at *2 (6th Cir. Mar. 28, 2019).

Beyond that, while release pending trial is the default, there are also times when presumptions come into play. Of particular relevance here, a rebuttable presumption arises as to both factors listed above (risk of flight and dangerousness) if the judicial officer finds that "there is probable cause to believe that the person committed" one of several listed offenses. 18 U.S.C. § 3142(e)(3). The indictment charges Sandoval with one such offense—"an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act." *Id.* § 3142(e)(3)(A). And the grand jury's return of the indictment establishes that probable cause exists that Sandoval committed the charged offense. *See Stone*, 608 F.3d at 945. Thus, the Court finds (and the parties do not dispute) that a presumption in favor of pretrial detention applies.

Because there is a presumption of detention, Sandoval "must produce evidence that he is neither a danger to the community nor a risk of flight." *United States v. Brooks*, No. 21-1646, 2021 U.S. App. LEXIS 33089, at *3 (6th Cir. Nov. 5, 2021). Although "this 'burden of production is not heavy, [the defendant] must introduce at least some evidence.'" *Id.* (quoting *Stone*, 608 F.3d at 945). Assuming the defendant meets his burden of production, the burden of persuasion is then on the government to show that the defendant should be detained. *Stone*, 608 F.3d at 945 (citations omitted).

Applying that framework, the Court finds that detention pending trial is appropriate here. Sandoval perhaps meets his burden of production. Looking at his history and characteristics, Sandoval has strong ties to the United States, even if to a different district. He has spent almost his entire life in southern California, and he could live with his wife and work for her business if released. (Doc. 14, #101). Additionally, he has worked as a part-time barber, and at the hearing, represented he previously worked in the music business. Moreover, he also has no criminal convictions or any physical or mental health concerns. Particularly given the low bar that applies, perhaps that is enough to meet his burden.

But the government has satisfied its burden of persuasion, both as to risk of flight and dangerousness. Start with the former, risk of flight, and consider the evidence on Sandoval's history and characteristics. True, Sandoval has family and community ties to the United States generally. But where, as here, the ties are not to the district where he is charged, i.e., the Southern District of Ohio, they carry less weight. *See* 18 U.S.C. § 3142(g); *United States v. Villegas*, No. 3:11-cr-28, 2011 WL 1135018, at *7 (E.D. Tenn. Mar. 25, 2011) (citation omitted) ("[A]lthough the defendant has ties with the community in which he lives in California, the defendant has no ties with this District, and the Court may consider this fact."). So, if the question is whether he is likely to flee from prosecution here in the Southern District of Ohio, his community ties are at best equivocal.

Beyond that, Sandoval also has a number of family ties to Mexico and a history of international travel. Of particular relevance, he was arrested on the instant

8

charges immediately upon return from a trip to Mexico. (Doc. 13, #97). On top of that, his father has fled from prosecution, most likely to Mexico. While the Court certainly would not suggest that flight from prosecution is an inherited tendency, having a close family member who has successfully fled suggests Sandoval would have access to the necessary information on how to do so, as well, if he wishes. Moreover, his wife's family apparently has property there, meaning he would have a built-in location to land.

The nature and circumstances of the offense here also suggest a risk of flight. Sandoval allegedly trafficked in a significant quantity of methamphetamine, over 300 pounds. That means Sandoval faces a mandatory minimum of ten years if convicted. *See* 21 U.S.C. § 841(b)(1)(A). And the possibility of a long sentence can make flight seem like an attractive alternative. *See United States v. Shuklin*, No. 19-4171, 2020 WL 2992522, at *1 (6th Cir. Mar. 18, 2020) (noting a potential sentence of twenty years in prison provided a "strong incentive to flee").

Then turning to Sandoval's criminal history, while it is true he has no prior *convictions*, that does not tell the whole story. Recall that the indictment here charges Sandoval with conspiring to traffic methamphetamine from December 2024 to January 8, 2025. (Doc. 3, #56). Some eight months later, on September 2, 2025, Sandoval was arrested in California for Possession of Controlled Substances while Armed, and Possession of a Stolen Vehicle. (Doc. 13, #96–97). Sandoval informed the Court that he has not been formally charged and does not expect a conviction to result. (Doc. 14, #101). But he also acknowledges the investigation is still pending,

(*id.*), and that arrest suggests the case here is not Sandoval's only interaction with controlled substances. The existence of those other charges could well provide an added incentive to leave the country.

Beyond that, there is some debate over his personal drug usage. Sandoval admits to using cocaine, including on his trip to Mexico immediately preceding his arrest. (Doc. 14, #100). While the Court understands Sandoval's argument at the hearing that this does not necessarily mean he has longer-term substance abuse issues, it does raise cause for concern. Sandoval could use controlled substances to deal with the stress from his ongoing criminal proceedings. And if he does, that could impair his decision making and make flight appear an attractive alternative.

Finally, there is the matter of resources. It appears that Sandoval's wife makes significant income from her business. (Doc. 12, #87–88). And if, as alleged, Sandoval is moving 300-pound shipments of methamphetamine, that would suggest he has access to significant resources on his own. Either set of resources could facilitate flight.

The bottom line is that the indictment casts Sandoval as a major player in what the government characterizes as an industrial level distribution conspiracy. And if the facts play out as alleged, that characterization seems warranted. Those charges create a strong incentive for flight, and it appears that he has the resources, a possible destination, and access to the know-how needed to make that happen. So the Court concludes that he presents a strong risk of flight.

Sandoval counters that, even if that is so, the Court could address that through location monitoring. (Doc. 14, #101). But the Court is not so sure. As Sandoval acknowledged at the hearing, a defendant can remove a location monitor. True, that sets off an alarm. But, especially if Sandoval is close to the border (he wishes his pretrial supervision to occur in southern California), so long as he has a plan and resources (see above), the Court concludes he could likely cross the border before apprehension.

The dangerousness analysis supports pretrial detention as well. To start, Sandoval owns three guns. While Sandoval downplays this risk by labeling two of them as "vintage" weapons, (Doc. 12, #88), he does not have much to say about his purchase of a Glock 19, that he was arrested in connection with that weapon (the California drug/firearm charge), or that the gun remains missing, (Doc. 13, #98). Even though Sandoval was not charged with a firearm-related offense here, he was charged with having a firearm in connection with his California drug charges. (*See id.* at #96–97). And the Court well knows that the combination of drugs and guns (if that occurred here) can be lethal.

Then there is the charged conduct in this matter. True, the weight of the evidence goes to the weight of the evidence of flight risk or dangerousness, not of guilt. *Bothra*, 2019 WL 8883547, at *2. But when the charged crime (if proven) itself evinces flight risk or dangerousness, the two collapse to some extent. *United States v. Hulbert*, No. 1:23-cr-107-5, 2024 WL 2745060, at *5 (S.D. Ohio May 29, 2024). And here, if Sandoval is in fact heading up a conspiracy that moves 300-pound shipments

of methamphetamine, that is an inherently dangerous activity. On that front, law enforcement recovered messages under an iCloud warrant at least suggesting that was the case. (Doc. 13, #96). To put that in context, sold in one-gram increments, that represents more than 136,000 sales. That strikes the Court as representing a danger to the community. *See United States v. Alcauter*, No. 23-3278, 2023 WL 6378271, at *2 (6th Cir. July 11, 2023) (quoting *Stone*, 608 F.3d at 947 n.6) ("To be sure, drug trafficking is a serious offense that, in itself, poses a danger to the community.").

True, as Sandoval argues, he may be unlikely to engage in drug sales while on pretrial release (even if he were so inclined, which he disputes). After all, the heightened scrutiny may make that an unattractive proposition. But that misses the point. If, as the weight of the evidence suggests *may* be the case (and the Court stresses it is only a 'may' at this point), Sandoval is willing to be involved in drug shipments of that magnitude, that also suggests something about his willingness to impose harm on a community—the very definition of dangerousness.

In sum, given the presumption of detention that Congress mandates, coupled with the information available to the Court on the four factors identified in 18 U.S.C. § 3142(g), the Court concludes that Sandoval represents a danger to the community, as well as a risk of flight. Accordingly, the Court cannot grant Sandoval's motion.

## CONCLUSION

For the reasons discussed above, the Court **DENIES** Sandoval's challenge to the Magistrate Judge's Order of pretrial detention. (Doc. 12).

**SO ORDERED.**


July 8, 2026
  **DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**